[Cite as *U.S. Bank, N.A. v. Lawson*, 2014-Ohio-463.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| U.S. BANK, N.A. | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13CAE030021 |
| SEAN AND KATHY LAWSON | |
| | |
| Defendants-Appellants | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of
                             Common Pleas, Case No. 11CVE080991


JUDGMENT:                    AFFIRMED, IN PART; REVERSED &
                             REMANDED, IN PART


DATE OF JUDGMENT ENTRY:      February 4, 2014


APPEARANCES:


For Plaintiff-Appellee                 For Defendants-Appellants


MIKE L. WIERY                          GREGORY A. WETZEL
RACHEL M. KUHN                         TROY J. DOUCET
Reimer, Arnovitz, Chernek             Doucet & Associates, Inc.
& Jeffrey Co., L.P.A.                  4200 Regent Street, Suite 200
30455 Solon Rd.                        Columbus, Ohio 43219
Solon, Ohio 44139

MICHAEL E. CARLETON
CRAIG SPADAFORE
DAVID F. HANSON
P.O. Box 165028
Columbus, OH 43216-5028

*Delaney, J.*

{¶1} Defendants-Appellants Sean and Kathy Lawson appeal the judgment entered by the Delaware County Court of Common Pleas in favor of Plaintiff-Appellee U.S. Bank, N.A.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Plaintiff-Appellee U.S. Bank, N.A. filed a complaint in foreclosure against Defendants-Appellants Sean and Kathy Lawson on August 15, 2011. In the complaint, U.S. Bank sought foreclosure of the real properly located in Radnor, Ohio based on the default of the terms of the note and mortgage encumbering the property. U.S. Bank was not seeking a personal money judgment because the Lawsons' debt was discharged in bankruptcy.

{¶3} The matter was heard at a bench trial before a magistrate. At trial, Christopher Delbene, the Default Case Manager for Homeward Residential, Inc., testified on behalf of U.S. Bank. He testified a Limited Power of Attorney authorized Homeward to appear at trial on U.S. Bank's behalf. The following facts were adduced at trial.

{¶4} On July 26, 2005, the Lawsons executed an Adjustable Rate Note in favor of American Home Mortgage Acceptance, Inc. in the amount of $188,000.00. The same day, as security for the note, the Lawsons executed a Mortgage, granting Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for American Home Mortgage Acceptance, Inc., first and best lien on the real property located at 3326 Gallant Road, Radnor, Ohio. The Lawsons do not dispute the execution of the note and mortgage.

{¶5}   The note in this case was endorsed in blank.  At trial, U.S. Bank was in possession of the original note and mortgage.  (T. 10).   U.S. Bank asserted the mortgage was assigned to U.S. Bank from MERS as evidenced by an Assignment of Mortgage recorded on March 9, 2011.   The mortgage assignment was signed by Joseph Kaminski, an Assistant Secretary of MERS.   The Lawsons introduced Defendants' Exhibit B, which was a MERS Corporate Resolution appointing MERS certifying officers, dated March 29, 2008.  (T. 30).  As of March 29, 2008, Joseph Kaminski was not on the list of certifying officers.  (T. 30).  On re-direct examination, Delbene testified it was possible MERS could update the letter appointing or certifying officers.  (T. 70).  Delbene testified he had reviewed updated MERS documents and Joseph Kaminski was a certifying officer based on updated MERS documents.  (T. 70).

{¶6}   The Lawsons defaulted under the terms of the note on October 1, 2010.

{¶7}   Homeward Residential, Inc. services the mortgage loan at issue on behalf of U.S. Bank.  (T. 5).  Homeward Residential has a mortgage platform or monitoring system to determine when a mortgage is in default.  (T. 16).  When a mortgage is in default, Homeward Residential sends a task to its third-party vendor to generate a Notice of Default letter that the third-party vendor mails to the borrower.  (T. 16).  In 2011, Homeward Residential contracted with G. Moss and Associates as the third-party vendor for some of the northeastern states to generate the notice of default letter.  (T. 16).  U.S. Bank alleged that on May 3, 2011, G. Moss and Associates sent the Lawsons a notice of default letter by ordinary and certified mail.  (T. 16).  U.S. Bank introduced a copy of the notice of default letter sent to the Lawsons as Plaintiff's Exhibit 5.  The loan number on the default letter matched the loan number for the Lawsons' mortgage loan.

(T. 15). The default letter listed the property address listed on both the mortgage and the note. (T. 16). The letter was to be sent by first-class mail and certified mail. (T. 16). Delbene testified Homeward Residential did not mail the default letter; G. Moss mailed the default letter. (T. 55). Delbene stated he could not say whether G. Moss actually mailed the default letter by first class or certified mail. (T. 55). There was no evidence presented by the Lawsons to dispute whether they had received the notice of default letter.

{¶8} On September 18, 2012, by Magistrate's Decision, the magistrate found the Power of Attorney established Homeward Residential was the servicing agent for U.S. Bank, and as an employee of Homeward, Delbene, had the authority to appear and testify at trial. As default case manager, Delbene also had personal knowledge of the matter, as required by Evidence Rule 602. The trial court concluded the Lawsons did not have standing to challenge the validity of the assignment of mortgage between MERS and U.S. Bank. Therefore, the MERS Corporate Resolution offered into evidence was inadmissible. Thereafter, the parties submitted proposed findings of fact and conclusions of law.

{¶9} On November 15, 2013 the magistrate issued a decision granting foreclosure in favor of U.S. Bank as holder of the note and mortgage herein. The Lawsons objected to the Magistrate's Decision.

{¶10} By Judgment Entry filed February 25, 2013, the trial court overruled the objections to the Magistrate's Decision, and granted judgment in favor of U.S. Bank.

**ASSIGNMENTS OF ERROR**

{¶11} The Lawsons now appeal, assigning as error:

{¶12} "I. THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE PLAINTIFF'S EXHIBIT 5, THE MAY 3RD BREACH LETTER.

{¶13} "II. THE TRIAL COURT ERRED WHEN IT FOUND G. MOSS HAD MAILED THE BREACH LETTER TO THE LAWSONS.

{¶14} "III. THE TRIAL COURT ERRED WHEN IT EXCLUDED THE LAWSONS' EXHIBIT B. FROM EVIDENCE AS IRRELEVANT.

{¶15} "IV. THE TRIAL COURT ERRED WHEN IT FOUND DELBENE WAS COMPETENT TO TESTIFY AND HAD AUTHORITY TO TESTIFY ON PLAINTIFF'S BEHALF.

{¶16} "V. THE TRIAL COURT ERRED WHEN IT FOUND THE LAWSONS IN DEFAULT OF AN ANSWER."

**I.**

{¶17} The Lawsons argue in their first Assignment of Error that the trial court abused its discretion when it admitted Plaintiff's Exhibit 5, the May 3, 2011 notice of default letter. We disagree.

{¶18} The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶19} The evidence at issue is Plaintiff's Exhibit 5, the May 3, 2011 notice of default letter. At trial, Christopher Delbene, a default case manager with Homeward Residential, testified as to the notice of default letter. Homeward Residential serviced the Lawsons' mortgage loan on behalf of U.S. Bank. Homeward Residential contracted with a third-party vendor, G. Moss and Associates, to generate and send notice of default letters to borrowers whose loans were serviced by Homeward Residential. In this case, G. Moss and Associates generated the May 3, 2011 notice of default letter based on information it received from Homeward Residential. The Lawsons objected to the introduction of the notice of default letter and Delbene's testimony as to the notice of default letter based on hearsay. The Lawsons argued Delbene could not testify to the notice of default letter because it was drafted and mailed by G. Moss and Associates, not Homeward Residential.

{¶20} The trial court has discretion to admit or exclude relevant evidence, but it has no discretion to admit hearsay. Evid.R. 802 requires the exclusion of hearsay unless an exception applies. *John Soliday Fin. Grp., LLC v. Pittenger*, 190 Ohio App.3d 145, 2010-Ohio-4861, 940 N.E.2d 1035, ¶ 28 (5th Dist.). One such exception to the hearsay rule is the "records of regular conducted activity," more commonly known as the business records exception. Evid.R. 803(6). The rule states:

> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make

the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The rationale behind Evid.R. 803(6) is that if information is sufficiently trustworthy that a business is willing to rely on it in making business decisions, the courts should be willing to rely on that information as well.  See staff note to Evid.R. 803(6).

{¶21} "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'"  *John Soliday Fin. Grp., LLC*, 2010-Ohio-4861, ¶ 31 quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171, quoting Weissenberger, Ohio Evidence Treatise (2007) 600, Section 803.73.

{¶22}  In the *John Soliday Fin. Grp., LLC v. Pittenger* case, we reviewed the term "other qualified witness":

The phrase "other qualified witness" should be broadly interpreted.  See *State v. Patton* (Mar. 5, 1992), Allen App. No. 1–91–12, 1992 WL 42806, citing 1 Weissenberger's Ohio Evidence (1985) 75, Section 803.79.

Further, it is not necessary that the witness have firsthand knowledge of the transaction giving rise to the record. *State v. Vrona* (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189, paragraph two of the syllabus. "Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6)." *Patton* at *2, quoting Weissenberger at 76.

*John Soliday Fin. Grp., L.L.C. v. Pittenger*, 190 Ohio App.3d 145, 2010-Ohio-4861, 940 N.E.2d 1035, ¶ 32 (5th Dist.).

{¶23} The magistrate's considered the Lawsons' objection to the introduction of the notice of default letter in her September 18, 2012 magistrate's decision. The magistrate found the notice of default letter was admissible as a business record under Evid.R. 803(6). The magistrate based her decision upon *Eastern Savings Bank v. Bucci*, 7th Dist. Mahoning No. 08 MA 28, 2008-Ohio-6363. In that case, during the testimony of Eastern Savings Bank's general counsel, Eastern Savings Bank introduced a broker's price opinion as to the fair market value of a piece of property. The broker's price opinion was prepared by a realtor who did not testify at trial. The realtor was not an employee of Eastern Savings Bank but was contracted by Eastern Savings Bank to prepare the broker's price opinion. The broker's price opinion was reviewed by an in-house appraiser who agreed with the realtor's assessment. *Id.* at ¶ 98.

{¶24} The defendants objected to the realtor's determination of value as hearsay.  The trial court found the broker's price opinion was a business record prepared at Eastern Savings Bank's instructions.  On appeal, the defendants argued the business records exception required the record to be made and kept by Eastern Savings Bank.  *Id.* at ¶ 100.  The Seventh District affirmed the trial court's determination as to the evidence.  It held:

> Here, the BPO [broker's price opinion] is a memorandum, report, record or data compilation, in any form.  The BPO is about conditions of the house and neighborhood and was made at or near the time that those conditions were observed.  The BPO was made by a person with knowledge, and ESB's handwriting thereon was made by a person with knowledge and from information transmitted by a person with knowledge.  It was in the regular practice of the business activity to make the document as shown by a witness who is not disputed to be unqualified.  The source of information and the method or circumstances of preparation do not indicate a lack of trustworthiness as it was generated as a regular business activity in preparation for a sheriff's sale regarding a debtor; it was not generated to prepare for the fraudulent conveyance lawsuit against the debtor's transferees. This foundation was not contested at trial.  See *Commercial Natl. Bank v. Zeis* (Oct. 13, 1987), 3d Dist. No. 13-86-3 (where in-house appraisals were admitted over objection based merely on lack of ability to cross-examine, not on foundational requirements).

The question presented is whether the language "it was the regular practice of that business activity *to make* the [document]" means that the business itself had to internally make the document. See Evid.R. 803(6) (emphasis added). Since person with knowledge is not modified by employee and since someone can make the document from information transmitted by such person with knowledge, the language of the rule (practice of the regularly conducted business activity to make) does not prohibit introduction of company documents merely because the business hired an independent contractor or outside agent to make the document for them.

Admittedly, the Staff Note to this exception states that the trustworthiness of the document is derived from the fact that employees, who are under an obligation to make the document, will be accurate since a business cannot as a matter of course function without adequate records. However, an agent is also under such an obligation once they agree to accept a business contract to make a document for their principal.

In addressing this rule, the Supreme Court has stated the document must be made by those with a self-interest to be served through accurate entry with knowledge the entry will be relied upon by the business. *Weiss v. Weiss* (1947), 147 Ohio St. 416, 425-426, 72 N.E.2d 245. This does not require the maker to be an actual employee. A hired agent or independent contractor would have a self-interest in accuracy

with knowledge its document will be relied upon by the business. Cf. *Mastran v. Uhrichich* (1988), 37 Ohio St.3d 44, 48-49, 523 N.E.2d 509 (patient's self-serving statement in medical record unrelated to medical treatment describing how accident occurred not admissible).

Even the cases cited by appellants do not require the entry to be made by an employee. The main case appellants rely upon uses the following telling language: *"such as* an employee" and the "exception does not extend to information provided by outside sources *who were under no business duty to be accurate* when preparing the records." *State v. Barron* (June 8, 2000), 10th Dist No. 99AP-59 (emphasis added) (dealing with patient's alleged writing on sign-in sheet). See, also, *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 177, 535 N.E.2d 676 (reports from outside sources such as consumer letters to manufacturer not admissible as no interest in accuracy to benefit business recipient). Thus, *Barron* actually stands for the proposition that an employee is only one type of permissible author and that an outside source is permissible if they are under a business duty to the recipient to be accurate and the document is kept in the regular course of the business recipient. See *id.*

We have held similarly in the recent past. As an alternative to our resort to the public records exceptions, this court stated that an autopsy report can be admitted as a business record of the coroner's office, even when no employee of that coroner's office made the report. *State v. Mitchell,* 7th Dist. No. 05CO63, 2008-Ohio1525, ¶ 110 (Columbiana

County Coroner's Office contracted Cuyahoga County Coroner's Office to perform certain forensic autopsies). First, we pointed out that it has been held that one entity can rely on the records of another entity to arrive at figures for its own records. *Id.,* citing *Great Seneca Fin. v. Felty,* 170 Ohio App.3d 737, 869 N.E.2d 30, 2006-Ohio-6618 (assignee of creditor can introduce documents received from original creditor as business records). We also concluded that since the autopsy record was prepared by the contractual agent of the coroner for the use and maintenance of said coroner, it can be considered to have in fact been prepared by the coroner itself. *Id.*

As such, the admission of such a record is a discretionary decision wherein the trial court determines if the person making the document sufficiently satisfies the trustworthiness foundational element of having a self-interest served through accurate entry on behalf of the business recipient. An individual or agency retained by the business to generate a document to be kept in the regular course of the business and for the purpose of a regularly conducted business activity is a very different scenario from a business's receipt of unsolicited letters from outsiders. It is not unreasonable to find trustworthiness in a case such as the one before us.

*Eastern Savings Bank v. Bucci*, 7th Dist. Mahoning No. 08 MA 28, 2008-Ohio-6363, ¶ 104-110. *See also State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 25 (10th Dist.).

{¶25} In this case, Homeward Residential contracted with G. Moss and Associates to prepare notice of default letters to be sent by G. Moss and Associates to borrowers defaulting on their mortgage loans.  Based on information sent to G. Moss and Associates from Homeward Residential's monitoring system, G. Moss and Associates prepared the notice of default letter.  Plaintiff's Exhibit 5 contained the property address and mortgage loan file number as maintained by Homeward Residential.  As in *Eastern Savings Bank v. Bucci*, the document was generated by an agency retained by the business to be kept in the regular course of the business and for the purpose of a regularly conducted business activity.  As opposed to the cases cited by the Lawsons in their appellate brief to demonstrate hearsay, the notice of default letter was created for Homeward Residential based on information provided by Homeward Residential.

{¶26} We find the factual scenario to be on point with that in *Eastern Savings Bank v. Bucci*.  The trial court did not abuse its discretion when it admitted Plaintiff's Exhibit 5 under the business record exception.

{¶27} The Lawsons' first Assignment of Error is overruled.

**II.**

{¶28} The Lawsons argue in their second Assignment of Error that the trial court erred when it found the evidence demonstrated G. Moss and Associates mailed the notice of breach letter to the Lawsons.  We disagree.

{¶29} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses.  Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his

or her judgment. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274, ¶ 23 citing *Peterson v. Peterson,* 5th Dist. Muskingum No. CT2003–0049, 2004–Ohio–4714, ¶ 10, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911 (Feb. 10, 1982).

{¶30} In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.,* 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley,* at ¶ 17–19. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley,* at ¶ 20 quoting *Twearson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist Stark No. 2011 CA00262, 2012–Ohio–3549 citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley,* at ¶ 19.

{¶31} It has been held that a term in a mortgage such as one requiring prior notice of a default or acceleration to the mortgagor is not an affirmative defense but rather a condition precedent. *U.S. Bank, N.A. v. Detweiler*, 191 Ohio App.3d 464, 2010-Ohio-6408, 946 N.E.2d 777, ¶ 52 (5th Dist.) citing *LaSalle Bank v. Kelly,* 9th Dist. Medina. No. 09CA0067–M, 2010-Ohio-2668, ¶ 13. To prevail in a foreclosure action, the plaintiff must establish that it complied with conditions precedent under the note and mortgage. *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3202, ¶ 43. In the present case, Paragraph 22 of the mortgage provides that the lender shall give borrowers notice prior to acceleration following borrower's breach of any covenant or agreement in the security agreement. (T. 48-49).

{¶32} The Lawsons argue U.S. Bank failed to establish it mailed the notice of default letter. Delbene testified as to the notice of default letter. He stated the notice of default letter was prepared by G. Moss and Associates on behalf of Homeward Residential. (T. 16). The letter contained the Lawsons' correct address. (T. 16). The notice of default letter contained a barcode at the top and bottom of the letter that showed the letter was sent by ordinary and certified mail. (T. 55). The letter was mailed by G. Moss and Associates. (T. 55). Delbene could not testify whether G. Moss and Associates mailed the notice of default letter. (T. 55). The Lawsons did not testify to state whether they received the notice of default letter.

{¶33} Under the "mailbox rule," there is a rebuttable presumption that a letter mailed to the correct address is presumed to be received in due course. *Cantrell v. Celotex Corp.*, 105 Ohio App.3d 90, 94, 663 N.E.2d 708 (1st Dist.1995). In the present case, the correct address was used on the notice of default letter. The notice of default

letter contained information to show it was mailed by ordinary and certified mail. No evidence was presented to rebut the presumption the letter was mailed.

{¶34} The trial court made a determination of the credibility of the evidence that the notice of default letter was mailed. Applying the pertinent standard of review for the Lawsons' challenge, we cannot say the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

{¶35} The Lawsons' second Assignment of Error is overruled.

### III.

{¶36} In their third Assignment of Error, the Lawsons argue the trial court abused its discretion when it did not allow the Lawsons to introduce Defendants' Exhibit B, the MERS Corporate Resolution appointing MERS certifying officers, dated March 29, 2008. Joseph Kaminski signed the mortgage assignment from MERS to U.S. Bank as an Assistant Secretary of MERS. The Lawsons provided a corporate resolution of MERS, dated March 29, 2008, demonstrating Kaminski was not one of the certifying officers listed on the resolution purported with authority to sign the mortgage assignment on MERS's behalf. On re-direct examination, Delbene testified it was possible MERS could update the letter appointing or certifying officers. (T. 70). Delbene testified he had reviewed updated MERS documents and Joseph Kaminski was a certifying officer based on updated MERS documents. (T. 70).

{¶37} The trial court excluded the evidence as irrelevant because the Lawsons lacked standing to challenge the assignment of the mortgage. The admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v.*

*Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} The Lawsons argued that because the originating lender and assignor MERS improperly executed an assignment of their mortgage, the assignee U.S. Bank could not foreclose on their property. There is no dispute between MERS and U.S. Bank as to whether the mortgage was properly assigned. There is also no dispute the Lawsons defaulted on their mortgage loan.

{¶39} In *Deutsche Bank Natl. Trust Co. v. Whiteman*, 10th Dist. Franklin No. 12AP-536, 2013-Ohio-1636, ¶ 16, the Tenth District Court of Appeals relied upon *LSF6 Mercury REO Invs. Trust Series 2008-1 v. Locke*, 10th Dist. Franklin No. 11AP-757, 2012-Ohio-4499[1] to hold: "because a debtor is not a party to the assignment of a note and mortgage, the debtor lacks standing to challenge their validity." In *Whiteman*, there was no dispute between the original mortgagee and the entity subsequently named as an assignee of the note and mortgage as to the identity of the holder of the note and mortgage. Rather, only the borrower challenged the assignment's validity, and there was no dispute that the borrower had defaulted on his loan and was subject to foreclosure. *Id*. at ¶ 16. *See also JPMorgan Chase Bank, N.A. v. Romine*, 10th Dist. Franklin No. 13AP-58, 2013-Ohio-4212; *HSBC Bank USA, National Assn. v. Surrarrer,* 8th Dist. Cuyahoga No. 100039, 2013-Ohio-5594.

---

[1] We note the Ohio Supreme Court on February 20, 2013, Case No. 2012-1926, declined to accept jurisdiction of the appeal in *Locke* which specifically raised this issue.

{¶40} The Lawsons refer this Court to *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, for the proposition that homeowners may challenge the assignment to the mortgage. In *Schwartzwald,* the court determined that a plaintiff receiving an assignment of a note and mortgage from the real party in interest subsequent to the filing of the complaint, but prior to the entry of judgment, does not cure a lack of standing to file a foreclosure action. In the present case, the Lawsons challenge the validity of the assignment between MERS and U.S. Bank. This is distinguishable from the issue presented in *Schwartzwald*.

{¶41} Accordingly, we find the trial court did not abuse its discretion when it did not admit Defendant's Exhibit B.

{¶42} The Lawsons' third Assignment of Error is overruled.

**IV.**

{¶43} The Lawsons' fourth Assignment of Error contends the trial court erred when it found Delbene was competent to testify and had authority to testify on U.S. Bank's behalf. We disagree.

{¶44} Christopher Delbene is a default case manager with Homeward Residential. U.S. Bank contracted with Homeward Residential to service the mortgage loan at issue in the present case. The Lawsons argue Delbene was not competent to testify because he did not have personal knowledge of the matter pursuant to Evid.R. 602. A review of Delbene's testimony shows he had firsthand knowledge of the functions of his employer as the mortgage servicer, such as the internal record-keeping

procedures.  He reviewed the Lawsons' loan file and possessed the original note and mortgage.

{¶45}    At trial, the Lawsons introduced Defendants' Exhibit A, a Limited Power of Attorney.  The Limited Power of Attorney appointed Homeward Residential as U.S. Bank's mortgage servicer.  Delbene testified the authority of Homeward Residential to appear on the behalf of U.S. Bank at trial came from the Limited Power of Attorney:

> And Task Number 1, demand, sue for, recover, collect, and receive each and every sum of money, debt, account, and interest which now is or herein after shall become due and payable belonging to or claimed by U.S. Bank National Association as trustee and to use or take any lawful means for recovery by legal process or otherwise.

(T. 25-26).

{¶46} We find no abuse of discretion for the trial court to find Christopher Delbene was competent and authorized to testify at trial on behalf of U.S. Bank.

{¶47}  The Lawson's fourth Assignment of Error is overruled.

**V.**

{¶48}  In their fifth Assignment of Error, the Lawsons argue the trial court erred in the March 13, 2013 judgment entry when it found the Lawsons were in default of answer.

{¶49}  U.S. Bank concedes the Lawsons filed an answer to the complaint in foreclosure.  The statement in the March 13, 2013 judgment entry regarding the Lawsons' default of answer was a clerical error.

{¶50}   The trial court can correct the clerical error pursuant to Civ.R. 60(A).

{¶51}   The fifth Assignment of Error is sustained.

## CONCLUSION

{¶52}   The judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings consistent with this Opinion and the law.

By: Delaney, J. and

Farmer, J. concur.

Hoffman, P.J. dissents.

*Hoffman, P.J., concurring in part and dissenting in part*

{¶53} I concur in the majority's analysis and disposition of Appellants' fourth and fifth assignments of error. But I respectfully dissent from the majority's disposition of Appellants' first, second, and third assignments of error.

{¶54} Appellants' first and second assignments of error involve the admissibility of the May 3, 2011 notice of default letter generated by G. Moss and Associates. While Homeward Residential's default case manager Delbene was a custodian of its business records, he was not the custodian of G. Moss and Associates' business records. Homeward Residential did not prepare and send the letter of default notice as a matter of its regular business practice; rather, Homeward Residential outsourced that business activity to someone else [G. Moss and Associates].[2] I find to allow G. Moss and Associates' default notice letter into evidence without a proper foundation being laid by its own record custodian or other qualified person of G. Moss and Associates eviscerates the rule. This extension of the business records exception endorsed by the majority could hypothetically extend beyond G. Moss and Associates, if G. Moss and Associates, in-turn, outsourced the administerial task of sending the notice to another service provider.

{¶55} I find placing the burden on Appellee to establish proof of proper mailing of the default notice via affidavit of the actual creator of the notice or of the records custodian or other qualified witness of G. Moss and Associates is not so cumbersome as to justify what I find to be an unwarranted application and extension of the business

---

[2] I find Delbene did not demonstrate he was sufficiently familiar with the operation of G. Moss and Associates' business operations, nor the circumstances surrounding sending the letter of default notice, its maintenance or retrieval. See Tr. p.14-16; 55.

records exception to the hearsay rule.[3]  I would sustain Appellants' first and second assignments of error.

{¶56} I also respectfully dissent from the majority's analysis and disposition of Appellants' third assignment of error.  While I recognize Appellants were not a party to the assignment of the mortgage, and there may not presently be a dispute between MERS and U.S. Bank as to whether the mortgage was properly assigned, I find the validity of the assignment determines who is the proper party to initiate the foreclosure action.  I find the validity of the assignment is clearly relevant to the issue of standing. While *Schwartzwald* may have presented a different procedural posture than the case sub judice, the Supreme Court recognized standing was necessary to commence the action.  Accordingly, because an invalid assignment could directly impact standing, I find it is a proper subject for challenge by the debtor.   Because Defendants' Exhibit B was relevant to the validity of the assignment, I find the trial court erred in excluding it.

---

[3] As such, I respectfully disagree with the position taken by the Tenth District Court of Appeals.