[Cite as *State v. Zusman*, 2015-Ohio-3218.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-087** |
| MICHAEL LEE ZUSMAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000113.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mary E. Santez,* Mary Santez, Esq., LLC., 1497 East 361st Street, Suite #3, Eastlake, OH 44095 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Michael Lee Zusman appeals from the judgment entry of the Lake County Court of Common Pleas, entered on a jury verdict, sentencing him to a total term of imprisonment of 12 and one half years for a series of crimes, all relating to the death of Danielle Spisak due to a heroin overdose. Mr. Zusman contends he was unfairly prejudiced by the admission of certain post mortem photographs of Ms. Spisak. He also

argues the balance of his convictions are against the manifest weight of the evidence. Finding no error, we affirm.

**{¶2}** On the night of May 8 to May 9, 2013, Ms. Spisak and Mr. Zusman were at his mother's house, alone. Ms. Spisak became unresponsive. Rather than calling emergency, Mr. Zusman contacted a friend, Brandyn Wargo. It took Mr. Wargo 45 minutes to drive to the house. After some further delay, they put Ms. Spisak in her car, which Mr. Zusman drove to TriPoint Emergency Medical Center, Mr. Wargo driving his own car. Attempts by the hospital staff to revive Ms. Spisak were unsuccessful. It was determined she died from a heroin overdose.

**{¶3}** February 21, 2014, Mr. Zusman was indicted by the Lake County Grand Jury in seven counts. The first was for involuntary manslaughter; the second, for corrupting another with drugs; the third for trafficking in heroin; the fourth, fifth and sixth for tampering with evidence; and the seventh for possessing criminal tools. Mr. Zusman was arrested three days later. February 28, he entered a written plea of not guilty to all the counts. Jury trial commenced July 14, 2014, and concluded July 18, 2014. That same day, the jury returned verdicts of guilty on all counts. The trial court held sentencing hearing July 29, 2014, filing its judgment entry of sentence the same day. Mr. Zusman timely noticed appeal, assigning two errors. The first reads:

**{¶4}** "In admitting several of the coroner's autopsy and hospital photographs of the victim as introduced by the State of Ohio despite the fact the photographs' probative value was outweighed by undue prejudice to the Defendant, the trial court abused its discretion; therefore, Defendant's convictions for Count One, Involuntary Manslaughter;

2

Count 2, Corrupting Another with Drugs; and Count Three, Trafficking in Heroin, should be overturned."

**{¶5}** The trial court admitted several post mortem photographs of Ms. Spisak, over objection. Mr. Zusman contends he was unfairly prejudiced by this, in violation of Evid.R. 403(A). He also argues these photographs were cumulative evidence, violating Evid.R. 403(B). Mr. Zusman cites to our recent decision in *State v. Clark*, 11th Dist. Trumbull No. 2013-T-0106, 2014-Ohio-5704, ¶69-70, for the proposition that such photographs are only admissible if they relate to proving an element of the state's case, and that none of the photographs in question do this.

**{¶6}** We review a trial court's evidentiary rulings for abuse of discretion. *Musson v. Musson*, 11th Dist. Trumbull No. 2013-T-0113, 2014-Ohio-5381, ¶34. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶7}** Evid.R. 403 provides:

**{¶8}** "(A) Exclusion mandatory.

**{¶9}** "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of *unfair* prejudice, of confusion of the issues, or of misleading the jury.

**{¶10}** "(B) Exclusion discretionary.

3

{¶11} "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." (Emphasis added.)

{¶12} The post mortem pictures of Ms. Spisak are not particularly gruesome. The question is whether they are relevant. "With regard to the risk of prejudice, it must be shown that the prejudicial effect was unfair because it might have provided the jury with an improper basis for rendering its decision." *State v. Comstock*, 11th Dist. Ashtabula No. 96-A-0058, 1997 Ohio App. LEXIS 3670, *30 (Aug. 15, 1997). We agree with the trial court the post mortem pictures are relevant. Several depict puncture wounds to Ms. Spisak's arm, consistent with needle marks. These photographs are obviously probative of the manslaughter, corrupting another with drugs, and trafficking in heroin charges. The balance of the photographs depict parts of Ms. Spisak's body, illustrative of the attempts to revive Ms. Spisak, as to which the medical personnel involved testified, or are illustrative of testimony by the deputy medical examiner. Being probative and not unfairly prejudicial, admission of the photographs did not violate Evid.R. 403(A). As the photographs helped explain the testimony of the medical personnel and deputy medical examiner, they were not cumulative in violation of Evid.R. 403(B).

{¶13} The first assignment of error lacks merit.

{¶14} Mr. Zusman's second assignment of error reads:

{¶15} "The jury's findings of guilt and the Defendant's subsequent convictions for Count One, Involuntary Manslaughter; Count Two, Corrupting Another with Drugs; Count Three, Trafficking in Heroin; Count Four, Tampering with Evidence; Count Five,

4

Tampering with Evidence; and Count Seven, Possessing Criminal Tools are contrary to the manifest weight of the evidence; therefore, Defendant's convictions for said counts should be overturned, and Defendant should be remanded to the trial court for a new trial on Counts One – Five and Count Seven, and sentencing on Count Six, Tampering with Evidence."

{¶16} In *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994), this court held:

{¶17} "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶18} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.)

{¶19} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶20} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶21} Mr. Zusman was convicted of involuntary manslaughter. In order to sustain that conviction, the state was required to prove he caused Ms. Spisak's death as the result of committing another felony. R.C. 2903.04(A). The predicate offenses in this case are corrupting another with drugs, R.C. 2925.02(A)(3); and, trafficking in heroin, R.C. 2925.03(A)(1). Mr. Zusman argues the state's evidence he committed either crime is minimal and unreliable. We disagree.

{¶22} R.C. 2925.02(A)(3) provides:

{¶23} "(A) No person shall knowingly do any of the following:

{¶24} "* * *

{¶25} "(3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent[.]"

{¶26} The state introduced text messages from Mr. Zusman to Ms. Spisak on the night in question, referencing "puppy chow" and "dog food." The state introduced testimony from various witnesses that these terms are street slang for heroin. The state introduced the testimony of Ms. Spisak's friend Laurina Giuliana, who spent most of the evening with Ms. Spisak before the latter joined Mr. Zusman. Ms. Giuliana testified her friend neither purchased nor used any heroin while they were together. The state introduced evidence that Ms. Spisak was driving prior to meeting with Mr. Zusman, and testimony that she would have been unable to drive while overdosing on heroin. The state introduced the testimony of Andrea Dudash that Mr. Zusman admitted to her and her boyfriend that he sold Ms. Spisak heroin; that he injected her on the evening she died; and, that she died an hour prior to Mr. Zusman summoning Mr. Wargo to his aid.

6

The state introduced the testimony of Mr. John McElroy that Mr. Zusman admitted giving heroin to Ms. Spisak and injecting her.

{¶27} Mr. Zusman observes that both Ms. Dudash and Mr. McElroy have extensive criminal histories, who admitted they received reduced sentences on their latest crimes for testifying against him. However, we cannot substitute our judgment of witness credibility for that of the jury. *DeHass, supra*, at paragraph one of the syllabus. Mr. Zusman further objects that no heroin or drug paraphernalia were found at his mother's home when the police executed a search warrant. The state counters the heroin was used, and that Mr. Zusman, in the long delay between Ms. Spisak's loss of consciousness, and the arrival of Mr. Wargo, had plentiful time and opportunity to dispose of any drug paraphernalia. We agree. Further, even discounting the testimony of Ms. Dudash and Mr. McElroy, the substance and quality of the evidence introduced by the state was such that a jury could find Mr. Zusman guilty of involuntary manslaughter, corrupting another with drugs, and trafficking in heroin.

{¶28} Mr. Zusman's convictions for involuntary manslaughter, corrupting another with drugs, and trafficking in heroin are not against the manifest weight of the evidence.

{¶29} Mr. Zusman also challenges two of his convictions for tampering with evidence, one of which dealt with his own cell phone, the other with that of Ms. Spisak. He notes that his cell phone was recovered from Mr. Wargo's car, and that the state was able to recover all relevant texts.

{¶30} Mr. Zusman was charged with violating R.C. 2921.12(A)(1), which provides:

7

**{¶31}** "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

**{¶32}** "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

**{¶33}** In this case, the state presented evidence that Mr. Zusman gave his cell phone to Mr. Wargo before they drove to the hospital. Mr. Wargo testified he put the cell phone in the cupholder in his car's console. While at the hospital Mr. Zusman went to Mr. Wargo's car to smoke. Photographs taken of the car by police thereafter show the phone on the front passenger's seat, hidden by a bag. Mr. Zusman admitted to police that he did not wish to be found with the cell phone, because of what was on it. Under these circumstances, the jury could reasonably find Mr. Zusman sought to "alter, destroy, conceal or remove" messages and/or texts from the cell phone, even if he failed to accomplish his purpose.

**{¶34}** Regarding Ms. Spisak's cell phone, it was never recovered. Mr. Wargo testified Mr. Zusman pocketed it while they were still at the house. Mr. Zusman told police he had never seen the cell phone. Based on this, the jury could reasonably find a violation of R.C. 2921.12(A)(1).

**{¶35}** Finally, Mr. Zusman challenges his conviction for possessing criminal tools, in violation of R.C. 2923.24 which provides, in pertinent part: "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." This count relates to his cell phone. Mr. Zusman asserts the only way in which his cell phone could be considered a criminal tool

8

is if the references to "dog food" or "puppy chow" in his conversations with Ms. Spisak are considered references to heroin. The state presented evidence these were references to heroin, which the jury obviously believed. We find no reason to disagree.

{¶36} The second assignment of error lacks merit.

{¶37} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

TIMOTHY P. CANNON, P.J., concurs in judgment only with a Concurring Opinion.

_____


TIMOTHY P. CANNON, P.J., concurs in judgment only.

{¶38} I respectfully concur in judgment only.

{¶39} I do not agree with the blanket statement that this court reviews "a trial court's evidentiary rulings for an abuse of discretion," as stated by the majority. Instead, our appellate court's standard of review for evidentiary rulings is mixed. While I agree some rulings on evidence are left to the sound discretion of the trial court, i.e., whether the prejudicial nature of evidence is outweighed by the probative value, a ruling on the admissibility of evidence, i.e., whether testimony constitutes hearsay or non-hearsay, is reviewed de novo. This was explained in *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, at ¶23. In that case, we stated:

> Although we apply an abuse of discretion standard to evidentiary rulings on matters such as relevancy and the admission of expert testimony, the trial court does not have discretion to admit hearsay 'except as otherwise provided by the Constitution of the United

9

States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.'  Evid.R. 802.  *See also State v. DeMarco*, 31 Ohio St.3d 191, 195, 31 Ohio B. 390, 509 N.E.2d 1256 (1987). Therefore, we apply a de novo review to determine whether testimony constitutes hearsay or non-hearsay.  *See John Soliday Fin. Group, LLC v. Pittenger*, 190 Ohio App.3d 145, 150, 2010 Ohio 4861, 940 N.E.2d 1035 (5th Dist.2010).

{¶40} Because of our mixed standard of review, as previously espoused by this court, it should not be suggested that the trial court has *discretion* to admit evidence that is clearly not permitted by the law.  In this case, we are asked to determine if the prejudicial nature of the photographs outweighed the probative value.  I agree that in this case, the trial court did not abuse its discretion in deciding to admit the post-mortem pictures of Ms. Spisak and, as such, appellant's first assignment of error is without merit.

{¶41} I respectfully concur in judgment only.